FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

02 DEC 31  PM 4: 08

U.S. DISTRICT COUR
N.D. OF ALABAMA

WENDELL ROBERTS,             }

      Plaintiff,               }

      vs.                       }          **CASE NO. CV 01-B-1818-NW**

WAL-MART STORES INC.,     }

      Defendant.          }         **ENTERED**

                                                **DEC 31 2002**

## <u>MEMORANDUM OPINION[1]</u>

Currently before the court is a Motion for Summary Judgment, and a Motion to Strike,

both filed by defendant, Wal-Mart Stores Inc. ("defendant" or "Wal-Mart").  Plaintiff, Wendell

Roberts ("plaintiff" or "Roberts"), contends that Wal-Mart should be liable for injuries he

sustained on March 17, 2001, when he slipped and fell in the Wal-Mart store in Russellville,

Alabama.  Upon consideration of the record, the submissions of the parties, the arguments of

counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary

Judgment is due to be granted, and defendant's Motion to Strike is due to be denied.

---

[1]At the conclusion of oral argument, the court informed the parties of its intention to grant
summary judgment in favor of defendant.  The court requested that counsel for defendant prepare
a proposed memorandum opinion for the court.  Although the court has made some changes to
the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion.
The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the
task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d
1353, 1373 n.46 (11th Cir. 1997).  This is an important opinion.  Before requesting a proposed
opinion from defendants' counsel, the court had reached a firm decision as to the appropriate
outcome.  Counsel drafted the opinion according to the express instructions of the court as to its
contents.  These instructions were stated to defendant's counsel, with plaintiff's counsel present,
following oral argument.  Although largely taken from the opinion proposed by defendant's
counsel, the court personally reviewed this opinion, and the opinion reflects the court's own
conclusions.



## FACTUAL SUMMARY

The pertinent facts are as follows. Plaintiff went to the Wal-Mart store in Russellville, Alabama, on March 17, 2001. (Compl. ¶ 3.) The plaintiff walked to the area of the store where bedding was displayed. (Roberts Dep. at 103.) The plaintiff turned onto an aisle where there were no customers or Wal-Mart employees. (*Id.* at 119, 121.) He did not see anything on the floor on that aisle. (*Id.* at 122.) He did not notice anything unusual about the merchandise on that aisle. (*Id.* at 164.) As he walked down the aisle, plaintiff slipped and fell to the floor. (*Id.* at 126-28.) Plaintiff remembers hearing the sound of metal banging on metal while he fell. (*Id.* at 136-37.)

Plaintiff never saw anything on the floor prior to the incident. (*Id.* at 121-23.) After the incident, he did not see any object or substance on the floor in the immediate area where he had fallen. (*Id.* at 145-46.) He did see a metal rack, also known as fencing, which was approximately twelve to fifteen feet away from him. (*Id.* at 139.)

Plaintiff did not know where the rack came from, how long it had been on the floor or how it got to be on the floor. (*Id.* at 160.) He does not know if anyone had reported to Wal-Mart that the rack was on the floor prior to the incident. (*Id.*) Plaintiff has no information that a Wal-Mart employee placed the rack on the floor. (*Id.* at 190-91.)

After securing himself, plaintiff and his son walked out of the aisle and spoke with Wal-Mart employee, Brenda Raper ("Raper"), who was working in an area close to where Roberts had fallen. (Roberts Dep. at 164-65; Raper Dep. at 29-30.) Plaintiff advised her that he had fallen after stepping on a metal rack. (Roberts Dep. at 168.) He showed Raper where he fell, and Raper picked up the metal rack and placed it on a shelf. (Roberts Dep. at 168-70.)

2

On the morning of the incident, Cornelia Landers ("Landers") was working in the domestic department, where the bedding aisle is located. (Landers Dep. at 9-10.) Approximately five minutes before Landers took her lunch break, she walked over to the ladies wear section, where Raper was, asked Raper to cover for her while she was at lunch, went back to her department and performed a safety sweep. (Landers Dep. at 16-17, 41-42; Raper Dep. at 31-32.) During the safety sweep, she looked up and down each aisle in the domestics department. (Landers Dep. at 17.) Landers did not see anything out of order in her department, and did not see a metal rack on the floor. (*Id.* at 43-44, 52.) Throughout the morning, even before this safety sweep, Landers had "zoned" the domestic department and did not see any metal racks on the floor, nor had she received any reports that anyone saw any metal racks on the floor.[2] (*Id.* at 40, 51, 55.)

Raper testified that Landers went to lunch at approximately 12:00 p.m., and that plaintiff approached her approximately fifteen minutes later at 12:15 p.m. (Raper Dep. at 28-31.) In an Incident Report prepared concerning Roberts's fall, the "Date of Incident" is listed as 11:55 a.m. (Incident Rep. at 1.) Anthony Baugh ("Baugh"), another Wal-Mart employee who spoke with Roberts, testified that the 11:55 a.m. time in the report was an estimate, and that the exact time Roberts fell could have been between 11:45 a.m. and 12:15 p.m. (Baugh Dep. at 109-11.) Raper did not advise Landers of the incident until Landers returned from lunch. (*Id.* at 52.)

Roberts also spoke to Baugh concerning the security videotapes from March 17, 2001, (Roberts Dep. at 181-82, 190), and Baugh later reviewed these tapes, (Baugh Dep. at 45-46).

---

[2]According to Landers, zoning refers to general upkeep, making sure everything is "ok" and in the correct place in one's area. (*See* Landers Dep. at 19-21.)

The domestics department had not been filmed at the time of the incident. (Baugh Dep. at 45-46, 55.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

Plaintiff asserts that the injuries he suffered falling in Wal-Mart were caused by defendant's negligence. In order to prove negligence on the part of the defendant, plaintiff must

demonstrate that the defendant owed a duty of care to the plaintiff, that the defendant breached

that duty, and that the breach was the proximate cause of the plaintiff's injury.   Alabama law

provides that although the storekeeper is not an insurer of a customer's safety, a storekeeper is

"under a duty to exercise reasonable care to provide and maintain reasonably safe premises for

the use of his customers." *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990).  In order to

sustain a claim, Roberts must demonstrate that the negligence of the store or the storekeeper's

agents or servants was the proximate cause of his injuries.  *Id.*  No presumption of negligence

arises out of the mere fact of an injury to a customer.  *See Ex parte Mountain Top Indoor Flea*

*Market, Inc.*, 699 So. 2d 158, 161 (Ala. 1997) (quoting *Tice v. Tice*, 361 So. 2d , 1051, 1052

(Ala. 1978).  In addition, regarding the elements of a "slip and fall" claim, Alabama law requires

that

> [a]ctual or constructive notice of the presence of the substance must be proven before [the
> storekeeper] can be held responsible for the injury.  Furthermore, the plaintiffs must
> prove (1) that the substance slipped upon had been on the floor a sufficient length of time
> to impute constructive notice to [the storekeeper]; or (2) that [the storekeeper] had actual
> notice that the substance was on the floor; or (3) that [the storekeeper] was delinquent in
> not discovering and removing the substance.

*Maddox*, 565 So. 2d at 16.

Plaintiff does not contend that Wal-Mart had actual notice of the metal rack on the floor

prior to the incident.  It is plaintiff's position that sufficient time had elapsed between the time of

Landers's last sweep of the domestics department and Roberts's fall for a jury to infer that

defendant was delinquent in discovering and removing the metal rack from the floor in an aisle in

the domestic department.  The court does not agree.

At most, approximately twenty minutes elapsed between the time Landers went to lunch and the time Roberts fell.  Landers took her lunch break after she completed a safety sweep of the domestic department.  Raper testier that Landers left for lunch around 12:00 p.m., and that Roberts approached her after he had fallen about fifteen minutes later at 12:15 p.m.

Alternatively, plaintiff contends that, "[i]f the incident occurred at 11:55 a.m., as stated in Defendant's Incident report, it is possible that the Plaintiff had already slipped, reported the incident to Ms. Raper, who may have removed the fencing before Ms. Landers went to lunch."  However, according to the evidence submitted, no reasonable jury could find this argument to be true.[3]  Absent evidence tending to create a genuine issue of material fact regarding an element of plaintiff's negligence claim, the court is of the opinion that defendant's Motion for summary judgment is due to be granted.

Plaintiff also contends that defendant wrongfully destroyed the security videotapes from March 17, 2001, and that, therefore, the jury may consider this fact as an inference of the defendant's guilt or negligence.  *See Ala. Power Co. v. Murray*, 751 So. 2d 494, (Ala. 1999) ("[T]he spoilation, or attempt to suppress material evidence by a party to a suit, favorable to an adversary, is sufficient foundation for an inference of his guilt or innocence.") (citing *So. Homes Ins. Co. v. Boatwright*, 164 So. 102 (Ala. 1935)).  Baugh reviewed the security footage from the day of the incident, and found that the area where Roberts fell had not been videotaped.

-----

[3]Raper was not in the area covering the domestics department until some point after Landers asked her to cover for her while Landers went to lunch.  After speaking with Raper, Landers walked back through the domestics department, performed her safety sweep, and then took her lunch break.  According to Raper, who spoke with both Landers and Roberts, Roberts did not approach her until fifteen minutes after Landers went to lunch.  Therefore, the court finds that Roberts fell some point after Landers went to lunch, which would also have been after she had performed a safety sweep.

6

Therefore, the court finds plaintiff's argument without merit because no reasonable juror could conclude that this evidence would have been favorable to plaintiff's case.

## MOTION TO STRIKE

According to the court's instructions, (*see* Ex. A, Scheduling Order of 10/30/01), the plaintiff had until April 25, 2002, to respond to defendant's Motion for Summary Judgment, which was filed on April 4, 2002. Plaintiff did not file a responsive brief and evidentiary submission until May 17, 2002. Although this response was twenty-two (22) days late, the court considered the arguments set forth in plaintiff's response. Therefore, the defendant's Motion to Strike will be denied.[4]

## CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted, and defendant's Motion to Strike will be denied. An Order in accordance with this Memorandum Order will be entered contemporaneously herewith.

**DONE** this 31st day of December, 2002.

SHARON LOVELACE BLACKBURN
United States District Judge

---

[4]Plaintiff's counsel is on notice that the court will likely strike any late submission in the future.